FILED

DEC 27 2012
DEC. 27, 2012
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

MALIBU MEDIA, LLC,

         Plaintiff,

              Case No. 1:12-cv-07579
              Honorable Edmond E. Chang

v.

John Does 1-23,

         Defendant.

---

**MOTION SEVER COMPLAINT AGAINST DEFENDANT JOHN DOE 16 AND QUASH SUBPOENA
AGAINST SAME**

---

    I, John Doe #16, respectfully move the court for severance of my case in the above captioned

matter and motion to quash the subpoena served on my Internet Service Provider, Comcast

Corporation.

    I have never committed the acts alleged by the plaintiffs, I do not know anyone who did, or if

anyone did what the Plaintiff is alleging. After receiving a letter from Comcast Corporation advising

me that it had been subpoenaed to release my identity and contact information in this matter, I began

to research Malibu Media, LLC and similar cases brought by others. My research has revealed that in

cases associated with Malibu Media, LLC, when the subpoenaed information is turned over to the

plaintiffs, the defendants, guilty or innocent, receive demand letters. These letters typically demand

from $2500 to $7500 and in some cases in excess of $13000 for settlement to avoid dealing with

threatened lawsuits, and the subsequent telephone calls, which have been reported as persistent if not

harassing, are the reason I am filing this motion. I respectfully request that I be allowed to make this

motion anonymously without revealing my personally identifying information as to do otherwise would

defeat the purpose of this motion. Out of the 379 copyright infringement case the plaintiff has filled this year less than 8% are against named individuals identified with similar subpoena's.

I base this motion on four factors: (1) improper joinder, (2) the person using a device connected to the internet at any given time is not necessarily the individual to whom the involved Internet Protocol address (IP address) is registered, (3) even the Media Access Control (MAC) address will often indicate on the wireless router connected to the internet but cannot be relied upon to determine who accessed the internet at any particular time, and (4) the inability to identify who actually accessed the internet through given IP and MAC addresses introduces an unacceptable degree of uncertainty with regard to the identification of alleged wrongdoers.

## I. Improper Joinder

To minimize court costs while suing or threatening to sue as many individuals as possible, Plaintiff's counsel, Paul Nicoletti, is using improper joinders as been typical in Malibu Media, LLC suits alleging copyright infringement through BitTorrent. Information retrieved from Justia Dockets and Filings (http://dockets.justia.com) indicates that Mr. Nicoletti filed 4 lawsuits on behalf of Malibu Media, LLC in the Indiana Southern District Court on November 26, 2012 each including 1-4 Does. In the Illinois Northern District Court Malibu Media LLC has filed 23 nearly identical Copyright Infringement cases against John Does each case included from 7 to 65 Does. If you look at the Illinois Central District there are 12 more Copyright John Does cases with a similar makeup. Thus far in 2012 alone, Malibu Media LLC has filed more than 355 suits in 14 states including California, Colorado, the District of Columbia, Florida, Illinois, Maryland, New York, Pennsylvania, Texas and Virginia

Against numbered Does using similar tactics. These suits collectively name more than 5000 Defendants, averaging around 17 Does per case.

As recently as 11/16/2012 Malibu Media, LLC was informed by Honorable Milton I. Shadur from the Illinois Northern District Court (case # 12 C 7578)

> "At yesterday's motion call counsel for plaintiff Malibu Media, LLC ("Malibu") presented its Motion for Leave To Serve Third Party Subpoenas Prior to a Rule 26(f) Conference. This Court advised Malibu's counsel that the just-published issue of the Michigan Law Review had included a comprehensive and well-informed student note ("The Case Against Combating BitTorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits," 111 Mich. L. Rev. 283 (2012)) that dealt directly with the problems posed by this and similar lawsuits targeting multiple "John Doe" defendants. In particular, this Court read for the record this excerpt from pages 292-93 of Volume 111, with footnotes omitted and emphasis in original:
>
>> When considering whether John Does have been properly joined, judges should require plaintiffs to plead facts sufficient to show that the defendants were not only part of the same swarm, but that they were part of the same swarm at the same time as one another. If plaintiffs fail to satisfy this standard, expedited discovery should be denied and the improperly joined defendants should be severed from the action. Generally, this means that a plaintiff would be unable to join every member of a swarm that exists for a protracted period of time. Rather, the plaintiff would have to show that all the defendants downloaded the copyrighted work over a short enough period of time to support a probable inference that all the defendants were present in the swarm at the same time. Such a time period would usually span hours rather than days or months."

Federal courts have previously recognized this improperness of joinder. In a BitTorrent case nearly identical to this one, *CP Productions, Inc.* v. *Does 1-300* case 1:201 Ocv06255, the court noted before dismissal:

> The 300 unnamed defendants have in fact infringed any copyrights (something that this court will assume to be the case, given the Complaint's allegations that so state), each of those infringements was separate and apart from the others. No predicate has been shown for thus combining 300 separate actions on the cheap - if CP had sued the 300 claimed infringers separately for their discrete

infringements, the filing fees alone would have aggregated $105,000 rather than $350.

In the same vein, in the Southern District of New York, Judge Colleen McMahon wrote when dismissing all but one of the defendants (John Doe #1) in *Digital Sins, Inc. vs. John Does J-245 Caye J:JJ-cv-08J7()"cM*, "They are dismissed because the plaintiff has not paid the filing fee that is statutorily required to bring these 244 separate lawsuits." In that case the under payment exceeded $85,000.00.

Commenting on the same case, Judge Milton Shadur wrote:

This Court has received still another motion by a "Doe" defendant to quash a subpoena in this ill-considered lawsuit filed by CP Productions, Inc. ("CP") against no fewer than 300 unidentified "Doe" defendants -this one seeking the nullification of a February 11,2011 subpoena issued to Comcast Communications, LLC. This Court's February 24, 2011 memorandum opinion and order has already sounded the death knell for this action, which has abused the litigation system in more than one way. But because the aggrieved Doe defendants continue to come out of the woodwork with motions to quash, indicating an unawareness of this Court's dismissal of this action, 1 CP's counsel is ordered to appear in court on March 9, 2011 at 9:00 a.m. Counsel will be expected to discuss what steps should be taken to apprise all of the targeted "Doe" defendants that they will not be subject to any further trouble or expense as a result of this ill-fated (as well as ill-considered) lawsuit.

In yet another nearly identical BitTorrent case, filed in the Northern District of California, *Millennium TGA, Inc* v. *Does* 1-21 *case 3:20J1cv02258*, Judge Samuel Conti found the same joinder problems for 21 Does, and wrote in his order denying request for leave to take early discovery, "This Court does not issue fishing licenses;" Two other BitTorrent cases in the Northern District of California by the same plaintiff, Boy Racer, have also been severed for improper joinder: *Boy Racer, Inc* v. *Does* 1-52 *case 5:20J1cv02329 (severed Does 2-52) Boy Racer, Inc* v. *Does* 1-71 *case 5:20J1cv01958 (severed Does 2-72)* In *Case 1:12-cv-00163-CMH-TRJ, Document 10,* United States Magistrate Judge Thomas Rawles Jones, Jr. of the United States District Court for the Eastern District of Virginia consolidated nine cases, eight in which Malibu Media, LLC was the plaintiff and recommended that "all but the first Doe defendant in each of these matters be severed, and that the

plaintiffs then be permitted to serve discovery on these remaining defendants' internet service providers to learn their identities."[ pps.3-4] In the same document, the Judge cites precedence from two earlier cases arguing against joinder (p. 7, ibid): that "the allegation that defendants used the same protocol on different days and times was insufficient" and that "the span of time covering the activity made the argument for joinder "unpersuasive." The same logic applies to the present case. The complaint shows that the alleged infringements took place on 21 different days between 7/31/2012 and 9/5/2012. Note that the dates span more than a month and on only 2 occasion were two defendants alleged to be active on the same date; none on the same time.


2. The person using a device connected to the internet at any given time is not necessarily the individual to whom an implicated Internet Protocol IP address is registered.

There are many circumstances in which the person to whom an Internet Protocol address may be registered is not the only person able to access the internet through that address. These are discussed at length in a Declaration *(Case* 2: *12-cv-02084-MMB Document* 9). The fact that the person to whom an IP address is registered may not be the only individual who can access the internet through that address and the implications of this have been recognized previously by the courts. In *Case 2:11-cv-03995*, the Honorable Gary Brown noted that "it is no more likely that the subscriber to an IP address carried out a particular computer function-here the purported illegal downloading of a single pornographic film-than to say an individual who pays the telephone bill made a specific telephone call" [po 6]

3. Even a valid Media Access Control (MAC) address will often indicate only the wireless router connected to the internet and cannot be relied upon to determine who accessed the internet at any particular time. The identity of devices connected to the internet through an IP address is often limited to the first in a chain of devices. With the advent of the wireless router, often this

will be the only device that can be identified. However, ownership of a wireless router, even a secured

one, is not tantamount to being the only possible user of the device. Therefore, even the MAC address logged by the Internet Service Provider is of limited and possibly no value in determining who accessed the internet at a given moment or even what computer or other device was used to do so. This is discussed in more detail in the Declaration referenced in (2) above. This has explicitly been recognized in the courts by Judge Gary R. Brown who wrote in RE: BITTORRENT ADULT FILM COPYRIGHT INFRINGEMENT CASES *(Case 2~JJ~cv-03995-DRH-GRB Document* 39) that:

> unless the wireless router has been appropriately secured (and in some cases even if it has been secured), neighbors or passersby could access the Internet using the IP address assigned to a particular subscriber and download the plaintiff's film. As one court noted:
>
> > In order to allow multiple computers to access the internet under the same IP address, the cable modem may be connect to a router, or may itself function as a router, which serves as a gateway through which multiple computers could access the internet at the same time under the same IP address. The router could be a wireless device in which case, computers located within 300 feet of the wireless router signal could access the internet through the router and modem under the same IP address. The wireless router strength could be increased beyond 600 feet if additional devices are added. The only way to prevent sharing of the wireless router is to encrypt the signal and even then an individual can bypass the security using publicly available software. [po 7, citations absent in the original]

4. The inability to identify who actually accessed the internet through implicated IP and MAC addresses introduces an unacceptable degree or uncertainty with regard to the identification or actual wrongdoers. If, as may often be the case, it is not possible to identify the device used to access the internet, much less the person operating the device, simply classifying all persons to whom implicated IP addresses are registered as offenders creates a significant possibility, even probability if repeated often enough, that a number of persons who have done no wrong will be served and possibly elect to settle claims out of court as an expedient. For some this may be a simple business decision: it will cost less to settle than to litigate; for others who lack the financial resources to mount an adequate defense, the "choice" is

forced upon them. This creates the potential for a coercive and unjust settlement and this has also been recognized by the courts in various jurisdictions. The Honorable Gary R. Brown writing on *Case 2: ll-cv-03995* (document 39) when evaluating the potential for coerced settlements noted that:

> Many courts evaluating similar cases have shared this concern. *See, e.g., Pacif ic Century Int'l, Ltd v. Does* 1-37-F. Supp. 2d--, 2012 WL 26349, at *3 (N.D. IlL Mar. 30,2012) ("the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies settle"); *Digital Sin, 2012* WL 263491, at 3 * ("This concern and its potential impact on social and economic relationships, could impel a defendant entirely innocent of the alleged conduct to enter into an extortionate settlement") *SBO Pictures*, 2011 WL 6002620, at *3 (defendants, whether guilty of copyright infringement or not would then have to decide whether to pay money to retain legal assistance that he or she illegally downloaded sexually explicit materials, or pay the money demanded. This creates great potential for a coercive and unjust 'settlement'"). [po 18] The Honorable Harold A. Baker noted when commenting on *VPR Internationale v. DOEr.,' 1017 (2:11-cv-02068-HAB -DGB # 15)*, that: Orin Kerr, a professor at George Washington University Law School, noted that whether you're guilty or not, "you look like a suspect."3 Could expedited discovery be used to wrest quick settlements, even from people who have done nothing wrong? The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether VPR has competent evidence to prove its case. In its order denying the motion for expedited discovery, the court noted that until at least one person is served, the court lacks personal jurisdiction over anyone. The court has no jurisdiction over any of the Does at this time; the imprimatur of this court will not be used to advance a "fishing expedition by means of a perversion of the purpose and intent" of class actions. Order, *die* 9. [po 3]

Magistrate Judge Harold R. Loyd writing in regard to *"Hard Drive Productions v. Does 1-90, C/1-03825 HRL* stated:

> Here, plaintiff has failed to allege that its claims **against** the 90 Doe defendants arise from "a single transaction or a series of closely related transactions." Instead, plaintiff provides a list of all 90 Doe defendants, identified by IP addresses, and the **date** and time they each appeared in the swarm over a period of63 days. See Complaint, Exh. A. Plaintiff also alleges that each Doe defendant "entered the same exact BitTorrent swarm and "reproduced and distributed the Video to multiple third parties." Complaint ~29. But, plaintiff's counsel admitted at the hearing that plaintiff could not truthfuly allege that any of the Doe defendants actually transferred pieces of the copyrighted work to or from one another. [po 10, emphasis added]

> In *Case 2:11-cv-03995* which addressed three cases *(Malibu Media, LLC v. John Does 1-26, CV 12-1147 (J.,)) (GRB). Malibu Media, LLC v. John Does 1-11, C'V 12-1150 (LDW) (GRB)*, and *Patrick Collins, Inc. v. John Does 1-9, CV 12-1154 (ADS) (GRBj)*

U.S. Magistrate Judge, the Honorable Gary Brown in discussing these issues noted that:

'" These developments cast doubt on plaintiff's assertions that "[t]he ISP to which each Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity." *See, e.g., Alalibu* 26, CompL At ~9, or that subscribers to the IP addresses listed were actually the individuals who carried out the complained of acts. *As* one judge observed: The Court is concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded "My Little Panties # 2." The risk is not purely speculative; Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material. Counsel stated that the true offender is often "the "teenaged son ... or the boyfriend if it's a lady." Alternatively, the perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared wireless networks. The risk of false positives gives rise to the potential for coercing unjust settlements from innocent defendants such as individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading "My Little Panties # 2" [pps. 7 -8, citations omitted in the original, emphasis original].

Judge Brown also observed that another judge had previously noted [citations

omitted in the original]:

the ISP subscriber to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes... By defining Doe Defendants as ISP subscribers who were assigned certain IP addresses, instead of the actual Internet users who allegedly engaged in infringing activity, Plaintiff's sought-after discovery has the potential to draw numerous internet users into the litigation, placing a burden upon them that weighs against allowing the discovery as designed. [ibid, p. 81 ]

Finally, also writing in case 2: *II-cv-03995*, Judge Brown described the litigation practices

in cases where pre-service discovery is the basis for identifying putative defendants as

"abusive" and went on to state:

Our federal court system provides litigants with some of the finest tools available to assist in resolving disputes; the courts should not, however, permit those tools to be used as a bludgeon. As one court advised Patrick Collins Inc. in an earlier case, "while the courts favor settlements, filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for." Patrick Collins, Inc. v. Does 1-3757,2011 U.S. Dist. LEXIS 128029, at *6-7 (N.D.Cal. Nov. 4, 2011).

For the Courts information the Plaintiff Malibu Media, LLC has filed 37 nearly identical copyright

infringement cases in Illinois alone in the last year.  A list is provided in Appendix A.  In total the

Plaintiff Malibu Media, LLC has filed over 355 nearly identical copyright infringement cases this year across the US. It has named Defendants in approximately only 25 of those cases or 7% of the time. While over 5,000 John Does so far this year suffer the stress, humiliation, fear, harassment, imitation and financial risk of possibly becoming a named defendant all the while they are pressured into settling these allegation once there identity are handed over to Plaintiff's councils. I suggest to the court to search the internet for "copyright troll" to learn more.

There are other more effective methods for the pornography industry to protect their copyrights including takedown notices, streaming content, encrypting content, and tagging content to name a few. Many in the industry are using these methods, some are not.

The John Does in these case guilty or not face a choice to pay thousands to their attorney to defend themselves against these baseless claims or thousands to the plaintiffs' attorney to settle and end the harassment and stress once there identity is handed over. The thousands of cases by the pornography industry are not about protecting copyrights they are a lucrative new revenue stream from John Doe settlements.

I respectfully move the court for severance from this matter and quash the subpoena for identifying and contact information served on Comcast Corporation for me, John Doe #16, only.

Dated: *12/21/2012*                                    Respectfully submitted,

s/John Doe 16
John Doe
*Pro se*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **MOTION SEVER COMPLAINT AGAINST DEFENDANT JOHN DOE 16 AND QUASH SUBPOENA AGAINST SAME**, was

served by Us Mail to the court and Plaintiff counsel:


Paul Nicoletti, Esq.

Law offices of Nicoletti & Associates, LLC

36880 Woodward Avenue, Suite 100

Bloomfield Hills, MI 48304

# Appendix A

For the Courts information the Plaintiff Malibu Media, LLC has filed 37 nearly identical copyright infringement cases in Illinois alone in the last year.  . (Information retrieved from Justia Dockets and Filings (http://dockets.justia.com))

**Plaintiff:** Malibu Media, LLC. **Defendant:** John Does, 1-23.

| Parties | Court | Judge | Type of Lawsuit | Cause of Action |
|---|---|---|---|---|
| **June 14, 2012** | | | | |
| Malibu Media, LLC v. Does 1-34 | ILCD | E. Shadid | Copyrights | Copyright Infringement |

**Plaintiff:** Malibu Media, LLC. **Defendant:** John Does 1-34.

| | | | | |
|---|---|---|---|---|
| Malibu Media, LLC v. Does 1-7 | ILCD | Mihm | Copyrights | Copyright Infringement |

**Plaintiff:** Malibu Media, LLC. **Defendant:** John Does 1-7.

| | | | | |
|---|---|---|---|---|
| Malibu Media, LLC v. Does 1-14 | ILCD | Baker | Copyrights | Copyright Infringement |

**Plaintiff:** Malibu Media LLC. **Defendant:** John Does 1-14.

| | | | | |
|---|---|---|---|---|
| Malibu Media, LLC v. Does 1-13 | ILCD | Mills | Copyrights | Copyright Infringement |

**Plaintiff:** Malibu Media, LLC. **Defendant:** John Does 1-13.

| | | | | |
|---|---|---|---|---|
| Malibu Media, LLC v. Does 1-7 | ILND | Kocoras | Copyrights | Copyright Infringement |

**Plaintiff:** Malibu Media, LLC. **Defendant:** John Does 1-7.

| | | | | |
|---|---|---|---|---|
| Malibu Media, LLC v. Does 1-14 | ILND | Shadur | Copyrights | Copyright Infringement |

**Plaintiff:** Malibu Media, LLC. **Defendant:** John Does 1-14.

| | | | | |
|---|---|---|---|---|
| Malibu Media, LLC v. Does 1-50 | ILND | E. Aspen | Copyrights | Copyright Infringement |

**Plaintiff:** Malibu Media, LLC. **Defendant:** John Does 1-50.

| | | | | |
|---|---|---|---|---|
| Malibu Media, LLC v. Does 1-55 | ILND | Kennelly | Copyrights | Copyright Infringement |

**Plaintiff:** Malibu Media, LLC. **Defendant:** John Does 1-55.

## August 11, 2012

| Malibu Media, LLC v. John Does 1-9 | ILCD | E. Shadid | Copyrights | Copyright Infringement |
|---|---|---|---|---|

**Plaintiff:** Malibu Media, LLC. **Defendant:** John Does 1-9.

| Malibu Media LLC v. John Does 1-11 | ILCD | Baker | Copyrights | Copyright Infringement |
|---|---|---|---|---|

**Plaintiff:** Malibu Media LLC. **Defendant:** John Does 1-11.

| Malibu Media, LLC v. John Does 1-7 | ILCD | E. Myerscough | Copyrights | Copyright Infringement |
|---|---|---|---|---|

**Plaintiff:** Malibu Media, LLC. **Defendant:** John Does 1-7.

## August 20, 2012

| Malibu Media, LLC v. John Does 1-17 | ILND | Kendall | Copyrights | Copyright Infringement |
|---|---|---|---|---|

**Plaintiff:** Malibu Media, LLC. **Defendant:** John Does 1-17.

| Malibu Media, LLC v. John Does 1-23 | ILND | Zagel | Copyrights | Copyright Infringement |
|---|---|---|---|---|

**Plaintiff:** Malibu Media, LLC. **Defendant:** John Does 1-23.

## August 21, 2012

| Malibu Media, LLC v. John Does 1-37 | ILND | Feinerman | Copyrights | Copyright Infringement |
|---|---|---|---|---|

**Plaintiff:** Malibu Media, LLC. **Defendant:** John Does 1-37.

| Malibu Media, LLC v. John Does 1-68 | ILND | Lee | Copyrights | Copyright Infringement |
|---|---|---|---|---|

**Plaintiff:** Malibu Media, LLC. **Defendant:** John Does 1-68.

| Malibu Media, LLC v. John Does 1-49 | ILND | Dow | Copyrights | Copyright Infringement |
|---|---|---|---|---|

**Plaintiff:** Malibu Media, LLC. **Defendant:** John Does 1-49.

| Malibu Media, LLC v. John Does 1-42 | ILND | Lee | Copyrights | Copyright Infringement |
|---|---|---|---|---|

**Plaintiff:** Malibu Media, LLC. **Defendant:** John Does 1-42.