JMA/561810                                                                                          10616-1

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MALIBU MEDIA, LLC,                          )
                                            )
                         Plaintiff,         )
                                            )
        v.                                  )
                                            )          No. 12-CV-7579
JOHN DOES 1-23,                             )
                                            )          Judge Edmund E. Chang
                         Defendants.        )          Magistrate Judge Michael T. Mason
                                            )
                                            )
                                            )

## JOHN DOE 12'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION TO SEVER; MOTION TO JOIN PORTION OF JOHN DOE 16'S MOTION TO DISMISS; MOTION TO QUASH; AND MOTION FOR PROTECTIVE ORDER AND TO PROCEED UNDER A PSEUDONYM

Defendant, JOHN DOE 12, by and through its attorneys, Jeffrey M. Alperin and Tressler LLP, and for its (1) Motion to Dismiss, or, in the Alternative, Motion to Sever; (2) Motion to Join a Portion of JOHN DOE 16's Motion to Dismiss; (3) Motion to Quash; and (4) Motion for Protective Order and Proceed Under a Pseudonym, states:

1.      The litigiousness of Malibu Media and other similar companies concerning "BitTorrent" litigation is staggering. According to Docket No. 12 in this case, Malibu Media alone has filed approximately 355 lawsuits since February 2012, implicating approximately 5,000 individuals or businesses.

2.      JOHN DOE 12 respectfully requests that this Court grant its (1) motion to dismiss, or, in the alternative, motion to sever; (2) motion to join a portion of JOHN DOE 16's motion to dismiss; (3) motion to quash; and (4) motion for issuance of a protective order and to proceed under a pseudonym.

1

3.      Prior to proceeding to the merits of each motion, it is important to put these types

of litigations in context.  As noted in <u>Media Products, Inc. v. John Does 1-26</u>, 2012 WL 3641291

(S.D.N.Y. Sept. 4, 2012), <u>and</u> <u>cases</u> <u>cited</u> <u>therein</u>:

> The relatively small group of lawyers who police copyright
> infringement on BitTorrent have customized the concept of
> extracting quick settlements without any intention of taking the
> case to trial.  Particularly troubling for courts is the high
> probability of misidentified Doe defendants (who may be the bill
> payer for the IP address but not the actual infringer) settling a
> case for fear of the disclosure of the allegations against them or of
> the high costs of litigation.  <u>See</u> <u>Digitial Sin, Inc. v. John Does 1-
> 176</u>, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) (noting plaintiffs
> concession that approximately 30% of Doe defendants are
> misidentified).

<u>Media Products, Inc.</u>, 2012 WL 3641291.[1]

4.      The BitTorrent and similar protocols were described aptly in the <u>Media Products</u>

case as follows:

> Simplified, BitTorrent and similar protocols break a large file into
> pieces while tagging each piece with a common identifier.  Where in
> the normal course a user would download a file from a single
> source, and download it sequentially from beginning to end, with
> the BitTorrent peer-to-peer protocol, users join forces to
> simultaneously download and upload pieces of the file from and to
> each other.  This reduces the bottleneck of Internet traffic that
> normally occurs at the server where the entire file is located and
> allows for faster download speeds for users.  This interconnected
> web of information flowing between users, or peers, is called a
> swarm.

<u>Media Products, Inc.</u>, 2012 WL 3641291.

---

[1] For the record, JOHN DOE 12 is a misidentified Doe defendant that did not infringe Plaintiff's copyright. JOHN DOE 12 had an unprotected wi-fi account that could have been accessed by neighbors and other passersby.

**MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO SEVER, AND MOTION TO JOIN PORTIONS OF MOTION TO DISMISS OF JOHN DOE 16**

5.      As noted by Judge Shadur in a decision in the case apparently filed immediately prior to the present one in the Northern District of Illinois, a recent Michigan Law Review Article "deals directly with the problems posed by this and similar lawsuits targeting multiple 'John Doe' defendants." Malibu Media, LLC v. John Does 1-25, slip op., Case No. 12-C-7578 (N.D.Ill. November 16, 2012). Judge Shadur stated:

> When considering whether John Does have been properly joined, judges should require plaintiffs to plead facts sufficient to show that the defendants were not only part of the same swarm, but that they were part of the same swarm at the same time as one another. If plaintiffs fail to satisfy this standard, expedited discovery should be denied and the improperly joined defendants should be severed from the action. Generally, this means that a plaintiff would be unable to join every member of a swarm that exists for a protracted period of time. Rather, the plaintiff would have to show that all the defendants downloaded the copyrighted work over a short enough period of time to support a probable inference that all the defendants were present in the same swarm at the same time. Such a time period would usually span hours rather than days or months.

Id., quoting "The Case Against Combating BitTorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits," 111 Mich.L.Rev. 283, 292-93 (2012) (Emphasis in original). Based upon further proceedings before Judge Shadur that are not all present in the currently available record in Case No. 12-CV-7578, in this other current Malibu Media case, Judge Shadur restricted the disclosure of the identity of John Does 1-25 in that case to only one, Argonne National Laboratory, apparently because Malibu could not meet the requirement that the defendants needed to be part of the same swarm "at the same time as one another." (See Malibu Media v. John Does 1-25, Case No. 12-C-7578 (N.D.Ill. December 18, 2012)).

3

6.      In the present case, Exhibit A to the Complaint delineates the alleged dates and times that the alleged copyright infringement of the work "Transcendence" occurred. (Complaint, pars. 4, 39). The dates run from July 31, 2012, to September 5, 2012, or approximately five weeks. Because joinder for BitTorrent cases requires that the members of the swarm were part of the same swarm "at the same time as one another," a period which is to be measured in hours, rather than days or weeks, JOHN DOE 12 should be dismissed with prejudice from this case, or, at the least, severed from Malibu Media's case against John Doe 1 and dismissed without prejudice. See Malibu Media, LLC v. John Does 1-25, slip op., Case No. 12-C-7578 (N.D.Ill. November 16, 2012); "The Case Against Combating BitTorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits," 111 Mich.L.Rev. 283, 292-93 (2012); Malibu Media v. John Does 1-25, Case No. 12-C-7578 (N.D.Ill. December 18, 2012).

7.      Moreover, JOHN DOE 16 has filed a detailed motion to dismiss the Complaint in this matter, which raises the additional following substantive arguments as to why dismissal is appropriate:

> (1) Plaintiff's Complaint is not supported by facts as required by Rule 8(a)(2), and is instead relying solely upon a speculative guess because merely identifying the owner of an IP address does not equate to identifying the copyright infringer. See In re BitTorrent Adult Film Copyright Infringement Cases, 2012 U.S.Dist.LEXIS 61447, at *9 (E.D.N.Y. 2012), and several similar cases cited in JOHN DOE 12's motion;[2]

---

[2] "[T]he assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time. An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones. . . Thus, it is no more likely that a subscriber to an IP address carried out a particular computer function – here the purported illegal downloading of a single pornographic film – than to say an individual who pays the telephone bill made a specific telephone call." Id.

4

(2) Plaintiff fails to allege facts that would allow the Court to draw the inference that the defendant violated the Copyright Act, and some element of volition or causation must exist;

(3) Plaintiff's Complaint is replete with conclusory statements arranged to support the already speculative conclusion that whomever pays the internet bill is the infringing party. For example, an IP address is not assigned to an "internet user" as Malibu Media alleges, but, rather, it is an internet access point, such as a wireless router. See In re BitTorrent Adult Film Copyright Infringement Cases, 2012 U.S.Dist.LEXIS 61447, at *9 (E.D.N.Y. 2012). Thus, plaintiff's conclusory allegation that each defendant, based solely upon their IP address, has violated the plaintiff's copyright by copying a piece of the plaintiff's downloaded work, must be disregarded. Indeed, there are several other reasons, including that anyone with wireless capability can access a subscriber's wi-fi network to access the internet, that reflect why the mere identification of an IP address does not reveal the identity of the infringing party;

(4) Manufacturers have admitted in other cases that there is a significant risk of misidentification. See Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 229, 242 (S.D.N.Y. 2012) (Admission that 30% of names turned over by internet service providers are not those of the individuals that actually downloaded or shared the copyrighted material), and other cases cited in brief;

(5) Comcast uses "Dynamic Host Configuration Protocol" to assign their IP addresses for most subscribers, meaning that the IP address assigned to its subscribers changes from time to time, and there is no allegation that the IP addresses of each of the John Doe defendants was tracked over the period of the swarm;

(6) The hash value is not a fingerprint of sender and recipient; and

(7) The plaintiff's "Transcendence" movie is available for free on the plaintiff's own site at a lower resolution and a google search discloses it is available on multiple sites showing the work as a type of advertisement to join the plaintiff's controlled subscription based website.

To save paper, JOHN DOE 12 hereby moves to adopt arguments A-H of JOHN DOE 16's motion to dismiss (Docket #12).

8.      Even if dismissal is not appropriate, JOHN DOE 12 submits that joinder here is not appropriate, and, thus, that it should be severed from MALIBU MEDIA's case against JOHN DOE 1 and dismissed without prejudice.    Under Rule 20, persons may be joined in one action as defendants if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and any question of law or fact common to all defendants will arise in the action. Fed.R.Civ.P. 20(a)(2).  While misjoinder is not a ground for dismissal, the court may sever any claim against a party.    Fed.R.Civ.P. 21.    Moreover, a court has discretionary authority to sever defendants from a case.  Fed.R.Civ.P. 20(b), 21.

9.      In similar cases, courts have ordered that John Doe defendants be severed.  For example, in Millenium TGA, Inc. v. John Does 1-800, slip op., Case No. 10-C-5603 (N.D.Ill., March 31, 2011), Judge Manning severed all John Doe defendants except one sua sponte because she was concerned with dozens if not hundreds of factually unique defenses from the defendants. See also Lightspeed v. Does 1-1000, slip op., Case No. 10-C-5604 (N.D.Ill., March 31, 2011); Media Products, Inc., 2012 WL 3641291 (in light of individualized defenses, permissive joinder, beyond the initial discovery on the internet service providers, is not appropriate); LaFace Records, LLC v. Does 1-38, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008); BMG Music v. Does 1-4, 2006 U.S.Dist.LEXIS 53237, at *5-6 (N.D.Cal. July 31, 2006) (only connection between defendants was allegation they used same ISP to conduct copyright infringement); Interscope Records v. Does 1-25, 2004 U.S.Dist.LEXIS 27782, *19 (M.D.Fla. April 1, 2004) (severance where only connection was allegation

they used the same ISP and peer-to-peer network to conduct copyright infringement). The trend in these types of BitTorrent cases is to find that "swarm joinder is not appropriate." Malibu Media, LLC v. Does 1-28, Case No. 12-CV-2599-WJM-MEH (D.Col., Oct. 5, 2012), and several cases cited therein (the "bare fact that a Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world").

10. Indeed, the eight potential reasons why a defendant may be misidentified through an IP address as an infringer that are delineated on JOHN DOE 16's motion to dismiss, pages 10-11, provide additional credence to Judge Manning's concerns in Millenium and Lightspeed. (See Docket No. 12, pp. 10-11).

11. As noted in Media Products, Inc., 2012 WL 3641291, the plaintiff's tactic here of joinder of all such "swarm" John Doe defendants "could turn copyright protection on its head," as it is conceivable that swarm joinder could encourage the creation of creative works not for their sales or artistic value, but to generate litigation and settlements. Id., quoting Raw Films, Inc. v. John Does 1-32, 2011 WL 6840590, at *2 n.5 (N.D.Ga. Dec. 29, 2011); On the Cheap, LLC v. Does 1-5011, 280 F.R.D. 500, 504 n.6 (N.D.Cal. 2011). Severing the Doe defendants in BitTorrent cases "does not destroy the incentive to prosecute infringers who use peer-to-peer protocols; it merely restores the balance that Congress intended." Media Procucts, Inc., 2012 WL 3641291, citing Malibu Media, LLC v. John Does 1-10, 2012 U.S.Dist.LEXIS 89286 (C.D.Cal. June 27, 2012) (order severing John Doe defendants).

12.     Indeed, in the recent Malibu Media case from the Central District of California, the court granted severance in a case nearly identical to the present one involving the very same plaintiff, noting:

> The Court is familiar with lawsuits like this one. [Citations omitted]. These lawsuits run a common theme: plaintiff owns a copyright to a pornographic movie; plaintiff sues numerous John Does in a single action for using BitTorrent to pirate the movie; plaintiff subpoenas the ISPs to obtain the identities of these Does; if successful, plaintiff will send out demand letters to the Does; because of embarrassment, many Does will send back a nuisance-value check to the plaintiff. The cost to the plaintiff: a single filing fee, a bit of discovery, and stamps. The rewards: potentially hundreds of thousands of dollars. Rarely do these cases reach the merits.
>
> The federal courts are not cogs in plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial. By requiring Malibu to file separate lawsuits for each of the Doe Defendants, Malibue will have to expend additional resources to obtain a nuisance-value settlement – making this type of litigation less profitable. If Malibu desires to vindicate its copyright rights, it must do it the old-fashioned way and earn it.

Malibu Media, LLC v. John Does 1-10, 2012 U.S.Dist.LEXIS 89286 (C.D.Cal. June 27, 2012).

13.     In sum, in light of the failure of the plaintiffs to allege that the defendants were not only part of the same swarm, but that they were part of the same swarm at the same time as one another, dismissal is appropriate. See Malibu Media, LLC v. John Does 1-25, slip op., Case No. 12-C-7578 (N.D.Ill. November 16, 2012); "The Case Against Combating BitTorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits," 111 Mich.L.Rev. 283, 292-93 (2012); Malibu Media v. John Does 1-25, Case No. 12-C-7578 (N.D.Ill. December 18, 2012). Dismissal is also appropriate for the arguments raised by JOHN DOE 16, arguments II.A-H, which JOHN DOE 12 hereby moves to

join. However, even if dismissal with prejudice is not appropriate, clearly, severance (requiring

dismissal without prejudice of JOHN DOE 12), is appropriate.

## MOTION TO QUASH

14.    Where courts in these types of cases grant a motion to sever, they also necessarily

grant a simultaneously filed motion to quash the subpoena. See Malibu Media, LLC v. John Does

1-16, Case No. 12-2088 (E.D.Pa. Oct. 3, 2012), and cases cited therein. Given the clear necessity

for the grant of the motion to sever, the present motion to quash should therefore be granted. Id.

15.    Further, a subpoena, like any discovery, may be quashed or denied under Rule

26(c)(1) "to protect a party or person from annoyance, embarrassment, oppression, or undue

burden or abuse." Fed.R.Civ.P. 26(c)(1). In In re BitTorrent Adult Film Copyright Infringement

Cases, 2012 U.S.Dist.LEXIS 61447, at *9 (E.D.N.Y. 2012), the Court dealt with a BitTorrent case very

similar to the present one and granted motions to quash based on Rule 26(c)(1). Malibu Media is

quite familiar with the BitTorrent case, given that it was one of the plaintiffs. The court noted that

the defendants' raised factual defenses in their motions to quash, including one, like JOHN DOE 12

here, that had a wireless router that was not secured, thus providing access to countless neighbors

and passersby, similar to over 61% of U.S. homes that now have wireless routers. The court noted

that it is no more likely that the subscriber to an IP address carried out a particular function than to

say that an individual who pays the telephone bill made a specific telephone call. Id. The court

also stated that neighbors and passersby can access the internet using the IP address assigned to a

particular subscriber if the router was unsecured, or, in some cases, even if it was secured. Id.

The Court also recounted Malibu's admission that 30% of the names turned over by ISP's are not

those of individuals who actually downloaded or shared copyrighted material in a separate case

(Digital Sin, Inc. v. Does 1-176, 2012 WL 263491, at *3 (N.D.N.Y. Jan. 30, 2012). The Court thus found that, although the Complaint alleged that, by discovering the individual or entity associated with an IP address would reveal the defendants' true identity, that is unlikely to be the case, as the alleged infringer could be "the subscriber, a member of his or her family, an employee, an invitee, neighbor or interloper." Id.

16.     Not only was the BitTorrent case concerned about the validity of the information sought by the subpoena, but it was also highly concerned about the unfair litigation tactics of companies like Malibu Media, as noted above.

17.     In BitTorrent, in light of the Court's finding that the identity of the IP address subscriber would not reveal the true copyright infringer, as well as the concern about unfair litigation tactics and the nature of the "work" (i.e., pornography), the mere association with which is damaging to one's reputation in the community, the Court concluded: "The Federal rules direct the Court to deny discovery 'to protect a person from annoyance, embarrassment, oppression, or undue burden or expense.' Fed.R.Civ.P. 26(c)(1). **This situation cries out for such relief**." In re BitTorrent Adult Film Copyright Infringement Cases, 2012 U.S.Dist.LEXIS 61447 (Emphasis added). Thus, the Court granted the motions to quash.

18.     In the present case, we are dealing with the same situation. JOHN DOE 12, like 61% of American homes, had a wi-fi network, and failed to secure it with a password. Thus, the disclosure of JOHN DOE 12's identity will not identify the alleged copyright infringer; indeed, as found in the BitTorrent case, the alleged infringer could well be a neighbor or any number of

passersby.[3] Combined with the legitimate concern about Malibu Media's "business model" of intimidation and embarrassment (see Malibu Media, LLC v. John Does 1-10, 2012 U.S.Dist.LEXIS 89286 (C.D.Cal. June 27, 2012)), and the inherent embarrassing nature of being associated with pornography (BitTorrent Adult Film Copyright Infringement Cases, 2012 U.S.Dist.LEXIS 61447), and this Court should follow the lead of the New York court and quash Malibu Media's subpoena on Comcast to reveal JOHN DOE 12's identifying information per Rule 26.

### MOTION FOR PROTECTIVE ORDER AND TO PROCEED UNDER A PSEUDONYM

19.    In light of the unusual nature of BitTorrent pornography cases and Rule 26 concerns, as well as doubt as to the veracity that the IP subscriber is the actual infringer, courts in this District and across the country have taken the unusual step of allowing John Doe defendants to remain anonymous and proceed in the case under their John Doe pseudonym. See, e.g., AF Holdings LLC v. John Doe, slip op., Case No. 12-C-4222 (N.D.Ill. Nov. 13, 2012); Sunlust Pictures, LLC v. John Does 1-75, 2012 WL 3717768, *1 (N.D.Ill., Aug. 27, 2012); Malibu Media, LLC v. John Doe No. 4, Case No. 12-Civ-2950 (S.D.N.Y. Nov. 30, 2012) ("The citizenry's interest in 'public scrutiny of judicial proceedings' is indeed 'vital,'; less so however, is the public interest in knowing the names of those Doe Defendants with a particular penchant for, inter alia, 'Tori Torrid Love'. Moreover, this Court recognizes the quintessential importance of maintaining some semblance of privacy within what are increasingly digitalized lives"); Digital Sin v. Does 1-176, 279 F.R.D. 239 (S.D.N.Y. 2012) (citing the risk of false positives as the reason to grant the Rule 26 protective order and allow John Doe to proceed as John Doe); Sunlust Pictures, LLC v. Cisa, Case No. 12-CV-656 (D.Col. Oct. 19, 2012).

---

[3] See also the list of additional reasons delineated in JOHN DOE 16's motion to dismiss as to why the IP address subscriber is not the alleged infringer.  (Docket No. 12 at pp. 10-11).

20.    In <u>Sunlust Pictures</u>, Judge Tharp recently noted that "Judges within this district have recognized that plaintiffs in these types of cases might unfairly threaten to disclose defendants' identities in order to improperly leverage settlement negotiations." 2012 WL 3717768, at *1; <u>See Hard Drive Productions v. Does 1-48</u>, 2012 WL 2196038, *6 (N.D.Ill. June 14, 2012) (warning plaintiff to consider Rule 11 before naming defendant who disputed that he had illegally downloaded pornographic movie). In <u>Sunlust Pictures</u>, therefore, the defendant was allowed to proceed in the case under a pseudonym, and the plaintiff was ordered not to reveal his identity in any public filing or communication without receiving prior express authorization from the court. <u>Id.</u> The case involved matters of a sensitive and highly personal nature, the harm to the public in not revealing Doe's identity was small, and the plaintiff would not be unfairly prejudiced. A disputed allegation that Doe downloaded pornography fits within the exception for anonymous litigation, allowed for "matters of a sensitive and highly personal nature such as birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families." <u>Id.</u>

21.    In <u>AF Holdings</u>, Case No. 12-C-4222, Judge Darrah reached the same conclusion.

22.    Thus, a protective order under Rule 26 is in order, permitting JOHN DOE 12 to proceed in this litigation anonymously, barring Plaintiff from, in any way, disclosing JOHN DOE 12's identity, or any agents, employees, or board members of JOHN DOE 12 to any person, entity, or organization without prior express court authorization, and requiring Plaintiff to file any document that discloses JOHN DOE 12's identity under seal.

WHEREFORE, JOHN DOE 12 respectfully requests that this Court enter an Order that grants the present motion and enters an Order that:

(1) Dismisses the Plaintiff's Complaint against JOHN DOE 12 with prejudice, and grants JOHN DOE's motion to join portions of JOHN DOE 16's motion to dismiss (Docket No. 12);

(2) Alternatively, severs JOHN DOE 12, and, for that matter, JOHN DOES 2-23, from the Complaint, and dismisses the Plaintiff's Complaint against JOHN DOE 12 without prejudice so long as MALIBU MEDIA, LLC, files a new Complaint within 14 days of the issuance of the Court's Order;

(3) Alternatively, quashes that portion of MALIBU MEDIA, LLC's subpoena to COMCAST pertaining to JOHN DOE 12; or

(4) Alternatively, issues a protective order that prohibits COMCAST and MALIBU MEDIA, LLC, from disclosing the identity or description of JOHN DOE 12 (including its current and former agents, employees, board members, directors, insurers, attorneys, and any identifying information concerning same) (collectively, "JOHN DOE 12") without first obtaining express court authorization; prohibits COMCAST and MALIBU from including in any filing, communication, or public disclosure the name or description of JOHN DOE 12 without first obtaining express court authorization; requires COMCAST and MALIBU to file under seal any document that discloses the identity or description of JOHN DOE 12; and allows JOHN DOE 12 to proceed anonymously in this litigation under the pseudonym of "JOHN DOE 12", or entering such further or alternative relief as this Court deems just and appropriate.

Respectfully submitted,

JOHN DOE 12

By: _____s/Jeffrey M. Alperin_____
One of Their Attorneys

Jeffrey M. Alperin
Tressler LLP
233 S. Wacker Drive, 22nd Floor
Chicago, Illinois 60606
Jalperin@tresslerllp.com
(312) 627-4000
Fax: (312) 627-1717