```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION

MALIBU MEDIA, LLC,              )  Docket No. 12 C 7579
                                )
             Plaintiff,         )  Chicago, Illinois
                                )  June 25, 2013
        v.                      )  9:04 a.m.
                                )
JOHN DOES 1-23,                 )
                                )
             Defendants.        )


           TRANSCRIPT OF PROCEEDINGS - Status
         BEFORE THE HONORABLE THOMAS M. DURKIN


APPEARANCES:


For the Plaintiff:      SCHULZ LAW PC by
                        MS. MARY K. SCHULZ (via telephone)
                        1144 East State Street
                        Suite A260
                        Geneva, Illinois 60134


For Defendant           TRESSLER LLP by
John Doe 12:            MR. JEFFREY M. ALPERIN
                        233 South Wacker Drive
                        22nd Floor
                        Chicago, Illinois 60606-6308


For Defendant           THE RUSSELL FIRM by
John Doe 20:            MS. ERIN K. RUSSELL
                        233 South Wacker Drive
                        84th Floor
                        Chicago, Illinois 60606


Court Reporter:         LAURA R. RENKE, CSR, RDR, CRR
                        Official Court Reporter
                        219 S. Dearborn Street, Room 1728
                        Chicago, Illinois 60604
                        312.435.6053
                        laura_renke@ilnd.uscourts.gov
```

1    (In open court.)
2        THE CLERK: Okay. Is anybody here on Malibu Media?
3    You are? Okay. I need to get Ms. Schulz on the line.
4        (Clerk places telephone call.)
5        MS. SCHULZ: This is Mary Schulz.
6        THE CLERK: Hi, Ms. Schulz. It's Sandy with Judge
7    Durkin calling on 12 C 7579, Malibu Media v. John Does.
8        MS. SCHULZ: Yes.
9        THE COURT: All right. Let's have everyone identify
10   themselves for the record, please.
11       MS. RUSSELL: Your Honor, Erin Russell for John
12   Doe 20.
13       MS. SCHULZ: Mary Schulz on behalf of Malibu Media.
14       THE COURT: All right. Ms. Schulz, maybe you can
15   review the bidding on this because I have a number of motions
16   to quash and then also a number of motions to voluntarily
17   dismiss a number of the John Does.
18       So what's left on the case?
19       MS. SCHULZ: Your Honor, as I reviewed the docket, I
20   believe the remaining Does are 2, 16, 20, and 12.
21       THE COURT: All right.
22       MS. SCHULZ: And I really can't -- I did not see any
23   motion filed by Doe No. 2, but I did see motions with regard to
24   12, 16, and 20.
25       THE COURT: Okay. And someone else just stepped up.

1           Why don't you identify yourself.
2           MR. ALPERIN:  Thank you very much, your Honor.  Jeff
3   Alperin here on behalf of John Doe No. 12.
4           Your Honor, I think there was a voluntary dismissal
5   that was filed by Malibu Media with respect to John Doe No. 12
6   as well.
7           THE COURT:  Yeah, I have that there was a voluntary
8   dismissal as to 2, 16, 20, and 12.  And if that's incorrect,
9   correct me, Ms. Schulz.
10          MS. SCHULZ:  I did not see that.  If that is the case,
11  I don't think there's anybody left.
12          THE COURT:  Okay.  Well, we should be sure because if
13  no one's left, then I'm dismissing the case.
14          MS. SCHULZ:  Your Honor, I did not see voluntary
15  dismissal for 2, 12, 16, or 20 on the docket.
16          THE CLERK:  It was filed on it looks like June 13th.
17          THE COURT:  Yeah, June 13th, Docket Entry 49, is
18  Notice of Voluntary Dismissal by Malibu Media as to John
19  Does 2, 12, 16, and 20 Only, filed by Paul Nicoletti, who I
20  think is your co-counsel.
21          MS. SCHULZ:  Right.
22          THE COURT:  He apparently filed it.  And that means
23  there is no case left.
24          MS. SCHULZ:  That's what it appears to mean.
25          THE COURT:  All right. Well, before I dismiss -- and,

1  you know, before I dismiss this case, can you inform me,
2  Ms. Schulz, how these settlements -- what is the criteria for
3  dismissing John Does?  I'm a little concerned about multiple --
4  there are 23 John Does sued in this case, and now they've all
5  been voluntarily dismissed.
6      Are they based on settlements?  Are they based on
7  simply some type of notice being given that the wrong person
8  has been sued or the computer that is involved in the -- in the
9  supposed infringement was not manned by someone who is likely
10  to have wanted to be involved in the infringement?
11      Do you know the answer to that?
12      MS. SCHULZ:  I do not know the specific answer to that
13  with regard to all of these individuals.  I know with regard to
14  matters that I've personally dealt with, there's a mixture of
15  reasons for dismissing.  In some situations, the identified
16  defendant cannot be found, or we talk with them and determine
17  that their defense is good and we voluntarily dismiss them.
18      In other situations, it's -- we resolve the matter
19  through settlements.
20      THE COURT:  What's the nature of the settlement?  Who
21  actually goes out and contacts these people?  Do you have a --
22  is there a third party that goes out and contacts them?  Do the
23  attorneys for the plaintiff contact them?  How is that
24  accomplished?
25      MS. SCHULZ:  The ones that I'm familiar with, your

1    Honor, it's I conduct the settlement discussions.
2              With regard to these in this particular case, I
3    stepped in as co-counsel, and I do not know exactly who handled
4    all of the discussions.
5              THE COURT:  Is Mr. Nicoletti -- would it be fair to
6    say he's lead counsel on this?
7              MS. SCHULZ:  Yes.
8              THE COURT:  All right.
9              MS. RUSSELL:  Your Honor --
10             THE COURT:  Go ahead.
11             MS. RUSSELL:  -- if I may.
12             THE COURT:  Sure.
13             MS. RUSSELL:  Erin Russell, for the record.
14             Your Honor, I can answer that question.
15             THE COURT:  Go ahead.
16             MS. RUSSELL:  And prior to Ms. Schulz's involvement as
17   local counsel for Malibu, settlement negotiations for as long
18   as I've been doing this type of work have been handled by a
19   third-party vendor, and they have a representative.
20             Mr. Nicoletti never had any authority to conduct any
21   type of negotiations.  It was all handled through a third-party
22   vendor and a single contact name, Elizabeth Jones.
23             THE COURT:  And a single contact what?
24             MS. RUSSELL:  Named Elizabeth Jones, the same woman
25   for both Malibu Media and another client of that third-party

1    vendor named Patrick Collins.
2            THE COURT: What are the approximate numbers in the
3    settlements? Are you aware of what these cases settle for?
4            MS. RUSSELL: I am. I do a number -- I do a lot of
5    work with Malibu cases. And the settlements are negotiated on
6    a per-work basis.
7            In my dealings with Ms. Jones, the third-party vendor,
8    it's normally a negotiated number per work based on their
9    assessment of whether the John Doe is a persistent infringer,
10   based on the number of works downloaded, and also on
11   information they provide, which they refer to as expanded
12   surveillance, which is an additional spreadsheet of purported
13   downloads performed on the same IP address.
14           Malibu makes an assessment based on how much of that
15   there is as to how they view whomever the downloader is in
16   terms of their culpability. It's kind of propensity evidence
17   that's used on the side.
18           THE COURT: Are we talking hundreds of dollars?
19   Thousands of dollars? I don't need the exact amount.
20           MS. RUSSELL: Oh, hundreds. I mean, you know, it may
21   be as low as $250 or $300 per work, and usually in negotiations
22   when Ms. Jones was involved more heavily was -- those used to
23   start at $1,000 per work.
24           THE COURT: And what if the answer is no, we're not
25   going to settle? Have you ever seen a plaintiff ever pursue

1 these cases?

2     MS. RUSSELL: No. There was recently a case that was
3 tried in Philadelphia.

4     THE COURT: Right.

5     MS. RUSSELL: I was involved in that case early on.
6 My client settled. But that was a case where Judge Baylson
7 really forced all the parties forward to trial. I've not seen
8 one where Malibu elected on their own steam to take something
9 to trial.

10     THE COURT: Okay. Because I'm just curious if the
11 suits are being pursued if there is any resistance from a
12 defendant in your experience, at least.

13     MS. RUSSELL: You know, it's -- it's what it appears
14 to be and what is largely reported to be a large number of John
15 Does. You know, if four people object, you still have a number
16 of John Does whose information was provided. Those people are
17 contacted and informed that they'll be pursued individually if
18 they don't settle.

19     You know, once the information is provided, though, I
20 mean, even if the Court were to grant pending motions, there
21 are always a number of people whose information has been
22 disclosed and who are contacted directly by Malibu.

23     THE COURT: In your experience --

24     MS. SCHULZ: Your Honor --

25     THE COURT: Oh, go ahead, Ms. Schulz.

1                MS. SCHULZ:  Excuse me, your Honor.

2                What Ms. Russell is talking about are cases in the

3     past that I've not been involved in.  And I can speak to

4     current cases and the pursuit of matters.

5                We have been diligent in filing now single-defendant

6     cases.  And where we have the name, we are amending the

7     complaint and serving summons and the complaints on those

8     individuals.  We are pursuing these cases vigorously.

9                THE COURT:  Okay.  But you can't get the names because

10    all you have is an IP address until you get a subpoena issued

11    after the filing of a John Doe lawsuit.

12               MS. SCHULZ:  That is correct.

13               THE COURT:  Okay.  Is there -- I'm just concerned

14    about nonlawyers or what appears to be a third-party vendor

15    pursuing -- and maybe there's nothing improper about it.  But

16    it's unusual to have a third-party vendor apparently -- I don't

17    know the nature of the supervision of the plaintiff's attorney.

18               And, Ms. Schulz, this doesn't apply to you.  I'm not

19    talking about you on this.

20               But I'm concerned about a third-party vendor going out

21    with -- depending on the level of supervision by the

22    plaintiff's attorney, seeking settlements.  And given the

23    possible embarrassment involved in the types of material --

24    materials downloaded, whether there's any improper suasion

25    being applied to people to settle for cases where they rarely

1 go to trial.
2      That's my concern.  And that's the only reason I
3 called anybody in today was to talk about this because I'm not
4 the only judge in the building who has a lot of cases like
5 this, and I probably will be getting more of them.
6      MS. RUSSELL:  Probably will be, your Honor.
7      And Ms. Schulz is correct.  Malibu has -- you know,
8 they do learn -- they do learn after multiple courts enter
9 orders quashing subpoenas or severing defendants, and they have
10 begun filing single-Doe cases.
11      In those cases, they've also started filing what they
12 call their expanded surveillance spreadsheet, which is some of
13 them are Malibu-owned works.  Much of it is not anything owned
14 by Malibu.  There's a judge in the Western District of
15 Wisconsin that recently sealed all the --
16      THE COURT:  Yeah, Judge Crocker.  I'm aware of that.
17      MS. RUSSELL:  So we're dealing with that as well.  So
18 it's a different bent on the -- on the pressure on the John
19 Doe.
20      THE COURT:  Well, what's the point of naming basically
21 porno movies as an attachment to a complaint other than to put
22 undue pressure on a defendant?
23      MS. SCHULZ:  Your Honor, I can answer that.  And we
24 are responding to Judge Crocker's rule to show cause.
25      The -- in some cases the expanded discovery includes

1  25 pages of downloads, which are not concerned -- we're not
2  looking for adult entertainment subjects in there.  And,
3  actually, those are of little relevance to us.
4        What we're looking at is the propensity to download.
5  And in some instances that I've personally been involved in,
6  it's helped to identify the defendant as the person who was not
7  the downloader.
8        In another case, we used that information where the
9  downloading was of a technical manual that applied to a
10 particular area in which the defendant was involved, in a
11 medical area.
12       THE COURT:  Well, the ones I've seen, because I have
13 seen some of the attachments, there's no doubt that the
14 information on there was porno.
15       MS. SCHULZ:  There is some, certainly, and that's
16 because --
17       THE COURT:  Well, the one I saw -- the attachment I
18 saw on one of these complaints, almost all of it was.  And I
19 think that was Judge Crocker's problem, because under
20 Rule 11(b)(1), if the pleading is presented for an improper
21 purpose, such as to harass, cause unnecessary delay, or
22 needlessly increase the cost of litigation, I think that's the
23 issue he's looking at.  And if you're briefing that, I'll be
24 curious how Judge Crocker eventually rules.
25       MS. SCHULZ:  We are briefing it.  And the purpose of

1  the expanded discovery is not as Judge Crocker has opined or
2  speculated.
3         THE COURT:  Okay.  That's fine.  And I'll look forward
4  to seeing how he rules once it's been briefed because I don't
5  have the benefit of the briefs, and I just noted his comments
6  when the last round of things were filed in front of him.
7         Okay.  Well, thank you all, everyone.  This is not to
8  cast a light on anyone, but it is to inform me about the
9  dynamics of an increasing number of types of cases I'm getting
10 like this, as are other judges here.  So this has been helpful.
11        MS. SCHULZ:  Thank you, Judge.
12        THE COURT:  All right.  This case is dismissed.  Every
13 defendant has been voluntarily dismissed as I read the docket
14 sheet, and so Case No. 12 CV 7579 is dismissed with prejudice.
15        MS. SCHULZ:  Thank you.
16        THE COURT:  Thank you.
17        MS. RUSSELL:  Thank you, your Honor.
18        MR. ALPERIN:  Thank you, your Honor.
19     (Concluded at 9:17 a.m.)
20                     C E R T I F I C A T E
21    I certify that the foregoing is a correct transcript of the
22 record of proceedings in the above-entitled matter.
23
24 */s/ LAURA R. RENKE*                         *July 12, 2013*
   LAURA R. RENKE, CSR, RDR, CRR
25 Official Court Reporter